IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald H. Ellis,<br><br>         Petitioner,<br><br>vs.<br><br>Rene G. Garcia, Warden,<br><br>         Respondent[1]. | No. 11-0148-TUC-BPV<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Petition), filed on March 14, 2011. (Doc. 1) Petitioner, Ronald H. Ellis, alleges "he was denied due process of law in connection with a prison disciplinary finding that resulted in the loss of good-time credits. DHO finding[s] were arbitrary and unsupported by evidence."

Before the Court is the Petition (Doc. 1) and Respondent's return with accompanying exhibits (Doc. 12) (Answer). No reply was filed.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation. (Doc. 7)

For the reasons discussed below, the Magistrate Judge recommends that the District Court enter an order denying the Petition on the merits.

I.   **PROCEDURAL BACKGROUND**

---

[1] Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Rene G. Garcia, the Warden at FCI-Englewood, is substituted for FCI-Safford, Conrad Graber.

At the time Ellis filed the present Petition he was an inmate at the Federal Correctional Institute, in Safford, Arizona (FCI Safford). (Petition, p.1; Answer, Ex. 1) Petitioner contends that the was denied due process of law in connection with a prison disciplinary finding that resulted in the loss of good-time credits. Petitioner also alleges that the Disciplinary Hearing Officer (DHO) findings were arbitrary and unsupported by evidence. (Petition, at 3) Ellis is currently serving a 120-month sentence of incarceration for distribution of cocaine, and is projected to complete this sentence on September 1, 2014, via Good Conduct Time Release. (Answer, Ex. 1, Attachment 2)

## II.   DISCIPLINARY HEARING AND PROCEEDINGS

On August 7, 2009, Officer C. Bailey conducted a housing unit search of Inmate Ellis's and Inmate Honeycutt's cell assignment in the B run cubicle. (Answer, Ex. 1, Attachment 5 "Incident Report", ¶ 11) Officer Bailey located a cell phone charger under the bed in a mesh duffle bag rolled up in a weight lifting belt. (Id.) Unsure as to whom the bag belonged to, Officer Bailey placed all the items back in the bag in the same manner they were before, took the bag along with all the other items to the Lieutenants Complex, and instructed Ellis to take the property that belonged to him and place it in a pile. (Id.) Inmate Ellis "immediately grabbed the mesh bag and felt the rolled up weight belt and said it was his bag placing it in his pile of belongings." (Id.) Officer Bailey wrote an Incident Report charging the petitioner with possession, manufacturing, or introduction of a hazardous tool, in violation of Prohibited Act Code 108. (Id., ¶¶ 9-10) Ellis stated that both he and Honeycutt's bags contained weight belts, and that he didn't check the bags, just "went off the fact that my bag was the new one." (Id., ¶ 24) Lieutenant Peterson concluded his investigation by finding that Petitioner was appropriately charged with the prohibited act of Code 108, and Petitioner remained in the Special Housing Unit pending a Unit Disciplinary Committee (UDC) action. (Id., ¶¶ 26-

27)

On August 8, 2009, Lieutenant T. Peterson, delivered a copy of the Incident Report to the petitioner, advised Petitioner of his right to remain silent, and conducted an investigation of the incident. (Id., ¶¶ 14-16, 22-23) Petitioner commented to the Unit Disciplinary Committee (UDC) regarding the incident report, that when asked to choose his bag, of two that were found, he picked the newest bag which was his, but had no knowledge of the cell phone charger. (Id., ¶ 17) The UDC referred the inmate to the Disciplinary Hearing Officer (DHO) for further action, and recommended that the incident report be expunged "based on inmate Honeycutt's admission that the cell phone and charger belonged to him." (Id., ¶ 19)

On August 19, 2009 Charles Reed, the DHO, conducted a Disciplinary Hearing. (Id., Attachment 6) Petitioner requested a staff representative and witness. (Id., ¶ II.B.) The witness submitted the following statement:

> [A]ll the inmates in the cube were ordered to leave and go to the Lieutenants office and they were searched. The[y] were allowed to go back to the cell and get some property and he observed Ellis retrieve pair of Tennis Shoes. Counselor Warren then said "We don't know who's stuff is who's."

(Id., ¶ C.2)

Petitioner made the following statements:

> It was not mine, I claimed the bag that it was in but the charger was not mine. My room mate claimed the charger.

(Id., ¶ B)

In addition to the Incident Report and Investigation, the DHO considered the photographs of the telephone. (Id., ¶ D)

The DHO found Petitioner committed the prohibited act of possession, manufacture, or introduction of a hazardous tool. (Id., ¶ IV.A) The DHO based his

- 3 -

findings on the "eyewitness account of the reporting staff member" and, though he considered the statements made by Petitioner and his witness, the DHO concluded that the Petitioner's ownership of the cell phone charged was established when he identified the bag as his, and though Petitioner stated that his cell mate claimed the charged, Petitioner was unable to explain how it got into his bag. (Id., ¶ V) The DHO stated that his Petitioner's witness did not provide credible evidence as he only witnessed Petitioner picking out some shoes and could not establish the ownership of the charger. (Id.) The DHO further acknowledged that Honeycutt did claim the charger, but when questioned about it, could not identify the location of the charger, or where he had hidden it.  (Id.) The DHO concluded:

> You clearly had the charger in your possession, you identified the bag containing the charger as yours you would not respond when asked how the charger got into your bag and inmate Honeycutt could not say were [sic] the charger was hidden if he had done so and given the wrong location it would have clearly implicated you in the offence.

(Id.)

The DHO sanctioned Petitioner to a loss of 40 days good conduct time, 60 days of disciplinary segregation, and loss of commissary privileges for 30 days.  (Id., ¶ VI)

### III. DISCUSSION

#### A. Jurisdiction

A federal court may not entertain an action over which it has no jurisdiction. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). Writ of habeas corpus relief extends to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(1) & (3). A prisoner who wishes to challenge the manner, location, or conditions of a sentence's execution must bring a petition pursuant to § 2241 in the custodial court. *Hernandez,*, 204 F.3d at 864, and must file the petition in

the judicial district of the petitioner's custodian. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980).

In the instant case Petitioner is seeking relief with respect to disciplinary proceedings that, in part, resulted in the loss of good time credit while incarcerated at FCI-Safford. Petitioner is challenging the legality of the manner in which his sentence is being executed. Thus, Ground One is properly before this Court under 28 U.S.C. §2241.

B.   Exhaustion

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). The evidence demonstrates that Petitioner exhausted his administrative remedies regarding the disciplinary action. (Answer, Ex.1, ¶ 4; Attachment 4, Administrative Remedies)

C.   Merits

*1.   Ground One: Due Process Claim*

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. Accordingly, they have a due process interest in the disciplinary proceedings that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987)(citing *Wolff*, 418 U.S. at 563-66.). "The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id*. (citing *Wolff*, 418 U.S. at 566.) Once these *Wolff* procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to

- 5 -

determine if the decision is supported by "some evidence." *Superintendent. Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1984) ("The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.")

The Court has reviewed the incident report and the DHO report and finds that the due process requirements of a prison disciplinary hearing, as established by *Wolff, supra,* were met in this case. As Respondents assert, The Petitioner received notice well in advance of the hearing. He was allowed to call witnesses (Inmate Vasquez). He had a staff representative (Ms. Brown)[2]. He received a written copy of the DHO's findings, which he attached to his administrative remedy (BP-10). The Disciplinary Hearing Officer, Charles Reed provided the Petitioner an impartial DHO in this matter. DHO Reed did not participate in the investigation of the Incident Report. The matter was investigated by Lt. Peterson. There is no evidence that DHO in this matter was anything but an impartial decision-maker under the definition set forth in *Wolff v. McDonnell, supra*. The Petitioner received the limited due process required by the Supreme Court in all disciplinary matters.

Petitioner asserts that the DHO findings were arbitrary and unsupported by the evidence. (Petition, at 4)   Petitioner describes the living area as "dormitory setting," a cubicle of eight inmates in which the charger was found in the area of inmate Ellis and Honeycutt. (Petition, Attachment Exhibits, ¶ 5) Petitioner argues that "[t]he evidence in this case was that the cell phone was found in another inmate's possession and the cell phone charger was found under a bunk bed in which inmate Honeycutt and Ellis live.

---

[2] Though Petitioner contends that during the hearing Ms. Brown made no attempt in defending him, this bare allegation is inconsistent with Ms. Brown's statement that she had discussed the case with Petitioner, and had obtained a witness statement for use at the hearing.  There is no right to effective assistance of counsel in a prison disciplinary hearing. *See Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989).

- 6 -

However, the bunk bed was in a eight man cubicle in a dormitory setting; thus, the administrators could not validly rel[y] on evidence that inmate Ellis was found in possession of the cell phone charge[r] after inmate Honeycutt claimed responsibility for both the Samsung phone and the Samsung charger. The statement made by inmate Honeycutt and the recommendation of UDC recommending that the incident report be expunge[d] should have had some effect on the finding. The[re] was no evidence of actual constructive possession to support a finding of violating § 108, when no evidence was presented to prove ownership, dominion, or control over the contraband or the premises in which the contraband was found." (Petition, Attachment) *See, e.g., Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001) (Where "the only evidence linking Broussard to the bolt cutters is that they were found in an area in which he worked, but to which approximately one hundred inmates had access," the "some evidence" standard was not met.); *but see Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (Where weapons were found in a cell that housed the plaintiff and three other inmates, the "some evidence"standard was met.).

In the absence of direct evidence pointing to a defendant's guilt, the "some evidence" standard of *Hill* may be satisfied by application of the constructive possession doctrine. Petitioner argues the DHO's decision violated due process because there was no evidence of actual constructive possession to support a finding of violation of § 108, when no evidence was presented to prove ownership, dominion, or control over the contraband or the premises in which the contraband was found. The court does not agree. The DHO did not rely on a constructive possession theory to support his findings.  This case is different from *Broussard* and *Hamilton*, because the petitioners in those cases had equal access to the common area, shared with other inmates, whereas in this case, the DHO found Petitioner possessed the cell phone charger, not because he lived in the

dormitory in which the weapons were found, but because the charger was found wrapped up in Petitioner's weight belt, which was found in Ellis's cell, in a mesh bag Petitioner admitted was his. (Answer, Ex.1, Attachment 4) These facts directly connected Ellis to the charger. The DHO relied on sufficient reliable evidence to satisfy the "some evidence" test. That another inmate admitted possession of the charger, and the Committee recommended expungement of the charge is irrelevant. Due process only requires that there be "some evidence" supporting the disciplinary decision. It does not require that the supporting evidence outweigh the evidence to the contrary. *Hill*, 472 U.S. at 455. The petition should be denied.

## IV. RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review, enter an order Dismissing the Ground One and the Petition in its entirety.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.

If objections are filed the parties should use the following case number: **No. CV-11-148-TUC-JGZ.**

Dated this 7th day of March, 2012.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 8 -